TANTE BALDEVISO and ROBERTA BALDEVISO,
individually, and on behalf of their minor children,
ANTHONY SORIANO BALDEVISO
and ERIC SORIANO BALDEVISO, et al.,
Petitioners-Appellants, *v.* MYRON B. THOMPSON,
Director, Hawaii Department of Social Services and
Housing, et al., Defendants-Appellees

No. 5196

DECEMBER 8, 1972

RICHARDSON, C.J., MARUMOTO, ABE,
LEVINSON AND KOBAYASHI, JJ.

126

OPINION OF THE COURT BY ABE, J.

The appellants are welfare applicants who claimed that their applications for welfare assistance were not processed within 30 days of receipt of the application as required by Federal[1] and State[2] regulations. They brought a petition for an alternative writ of mandamus before the Second Circuit Court on behalf of themselves and others similarly situated. Appellees (hereinafter "Department of Social Services and Housing" or "DSS&H"), charged with administering the State welfare programs, moved to quash the alternative writ of mandamus that had issued, attaching thereto affidavits of appellee Tam, Public Welfare Administrator. At the hearing on the motion to quash, oral testimony of appellee Tam was also heard.

The circuit court granted the motion to quash the alternative writ of mandamus on the ground that appellants failed to state a claim upon which relief could be granted. It appears that the basis of the circuit court's

[1]36 Fed. Reg. 10783, 45 C.F.R. 206.10 (a) (3) .
[2]Hawaii Public Welfare Manual § 3060.

judgment was "that full compliance [with the 30-day processing requirement] in the future is impossible."

Appellants have appealed from this judgment quashing the alternative writ of mandamus.

In their opening brief the appellants urged this court to "reverse the lower court's judgment and order the Respondent-Appellees to perform their legal duty; or, in the alternative, remand to the lower court to issue such an order." Since we have decided to remand this case to the circuit court, we need not decide whether this court may itself issue an original order to any non-judicial entity in exercising its appellate jurisdiction.

This being a civil action not excepted by Rule 81 of the Hawaii Rules of Civil Procedure prior to the amendments thereto effective July 1, 1972, the rules applied to the action brought by the appellants.[3]

The appellants' petition for an alternative writ of mandamus will be treated as a complaint. HRCP Rule 7 (a). Similarly, the appellees' motion to quash will be treated as a motion to dismiss for failure to state a claim upon which relief can be granted. HRCP Rule 12 (b) (6). Since affidavits and matters outside the pleadings were considered by the circuit court, the motion to dismiss shall be treated as one for summary judgment. HRCP Rule 12 (b). Thus, the question before this court is whether the circuit court correctly granted the motion of summary judgment in favor of the movant-appellees.

On an appeal from a summary judgment, the question is whether the complaints, affidavits and other matters considered outside of the pleadings raised any

---

[3]Since July 1, 1972, the effective date of the amendments, Rule 81.1 provides:

"The writ of mandamus is abolished in the circuit courts except when directed to a court of inferior jurisdiction. Relief heretofore available by mandamus may be obtained by appropriate action or by appropriate motion under the practice prescribed in these rules. In any action in the nature of mandamus the court may shorten the time prescribed by these rules for pleading or doing any other act."

genuine issue of material fact. *Richards* v. *Midkiff*, 48 Haw. 32, 396 P.2d 49 (1964) . *See also* 3 Barron & Holtzoff, Federal Practice & Procedure § 1242.

The circuit court below in essence granted summary judgment to the appellees on the ground that "full compliance [with the 30-day processing requirement] in the future is impossible." Thus it appears that the circuit court assumed that state and federal welfare regulations require the processing of every welfare application within 30 days of its submission.

We believe, however, that neither the state nor federal time limits for processing welfare applications are intended to be so rigidly applied. While a number of federal cases have passed on the applicability of the federal 30-day time limit to states, none appears to have decided the extent to which a state is bound by that limit. Unlike the state agencies administering their respective welfare programs in *Rodriguez* v. *Swank*, 318 F. Supp. 289 (N.D. Ill. 1970), *aff'd,* 403 U.S. 901 (1971), and *Worrell* v. *Sterrett,* Civ 69 F 33 (U.S. Dist. Ct. N.D. Ill., 1969) , there are no claims made by the DSS&H in this case that the federal regulations do not apply, or claims by the welfare applicants that the state regulations are at variance with the federal regulations. The DSS&H admits that it is bound by the federal regulations and that it is obligated to process relevant welfare applications within thirty days. The practical issue between the parties appears to be the acceptability of any given percentage of applications processed within 30 days.

Various sections of the Social Security Act providing for categorical assistance require that applications be processed with "reasonable promptness."[4] The rule promulgated by the Department of Health, Education & Welfare (HEW) now codified in 45 C.F.R. 206.10 (a) (3) interprets "reasonable promptness" to mean within

[4]For example, see 42 U.S.C. 302 (a) (8) , 42 U.S.C. 602 (a) (4) , 42 U.S.C. 1202 (a) (4) U.S.C. 1352 (a) (4) .

thirty days. The regulation also recognizes that processing 100 percent of the applications within 30 days of their submission may not be possible. It states:

"The State's time standards [not in excess of 30 days] apply except in unusual circumstances (e.g. where the agency cannot reach a decision because of failure or delay on the part of the applicant or an examining physician, or because of some administrative or other emergency that could not be controlled by the agency . . . ." 45 C.F.R. 206.10 (a) (3) .

In *Rodriguez* v. *Weaver,* No. 69 C 2615 (U.S. Dist. Ct. N.D. Ill. Findings of Fact Conclusions of Law & Order, February 9, 1972) ; see CCH Poverty Law Reporter ¶ 15, 136, the federal district court found that county departments of the Illinois Department of Public Aid ignored a previous court order requiring a determination of eligibility for benefits under the Aid to Families with Dependent Children (AFDC) program within 30 days. Based on this finding the court ordered that federal funds be cut off for April, 1972 unless 90 percent of the applications were processed during that month and that funds be cut off in succeeding months unless the county departments processed more than 95 percent of the applications during that time. We find it informative that the court did not require the county departments to process 100 percent of the applications in order to retain federal funding for the AFDC program.[5]

We believe that Hawaii's Department of Social Services & Housing is bound by HEW's and its own regulations with respect to the 30-day processing time limit. What is required, however, is good faith compliance with the regulations which is reasonable in light of the resources allocated to the DSS&H to carry out its functions in the welfare area.

---

[5]We do not mean to imply that the regulations require 95 percent compliance; nor do we imply that cutting off funds is the sole appropriate remedy in situations of non-compliance with the application processing time limits.

The Supreme Court of the United States has stated:

> "[I]n every case where a statute enacts or prohibits a thing for the benefit of a person, he shall have a remedy upon the same statute for the thing enacted for his advantage or for the recompense of a wrong done to him contrary to the said law." *Texas & Pacific Ry.* v. *Rigsby*, 241 U.S. 33, 39 (1916).

Regulations of governmental agencies have the force of law. *State* v. *Kimball*, 54 Haw. 83, _____ P.2d _____ (1972). The 30-day time limit established by the state and federal regulations were promulgated to effectuate the pronouncement that applications be processed with "reasonable promptness." Considering the realities of poverty and the immediacy of the needs of people seeking welfare aid, it is not far from accurate to say that these provisions are for the benefit of the welfare applicants. It follows that relief should be granted in this case if the DSS&H has violated the 30-day provisions and has failed to sustain the burden of showing its good faith in reasonably complying with the regulations.[6]

Since the good faith of the DSS&H does not appear to be in issue, only the reasonableness of the extent to which the 30-day time limit is complied with remains to be discussed. In many areas of the law, what constitutes "reasonableness" of an act or condition is a question to be determined in the light of surrounding circumstances. *See, e.g., City & County* v. *Kam*, 48 Haw. 349, 402 P.2d 683 (1965) (reasonable time for performance of contract); *In re Taxes, B. P. Bishop Estate*, 33 Haw. 149 (1934) (reasonable value); *Wax* v. *City and County of Honolulu*, 34 Haw. 256 (1937), *Pow Kee* v. *Wilder S. S. Co.*, 9 Haw. 57 (1893) (reasonable care in negligence).

---

[6]45 C.F.R. 206.10 (a) (3) requires that the case record show the cause for any delay in processing an application beyond the time limit. The implication here is that the burden of justifying non-compliance should rest with the DSS&H.

We are convinced that the test of reasonableness is applicable in this case. The admission on the part of DSS&H that it was impossible for the department to comply in 100 percent of the cases with the 30-day regulation was not determinative of the issue before the trial court. Furthermore, on the issue of whether the DSS&H had reasonably complied with the 30-day regulation involves a question of fact. Thus, it cannot be said that "there is no issue as to any material fact" in this case and therefore the trial court erred in rendering summary judgment in favor of DSS&H.

The appellant welfare applicants claim that the actions of the DSS&H discriminates between two classes of applicants: (1) those whose applications are processed within 30 days and (2) those whose applications are not processed within 30 days. It is further argued that "conservation of public funds is not a legitimate basis for discriminating between eligible recipients for welfare assistance." Thus, they contend that the equal protection guarantees of the United States and Hawaii Constitutions have been violated.

Even if this court agrees with the appellant welfare applicants' argument that conservation of the public funds may not be a sufficient state interest to justify certain cases of discrimination so as to be violative of the equal protection guarantees, *Shapiro* v. *Thompson,* 394 U.S. 618 (1969) ; *Graham* v. *Richardson,* 403 U.S. 365 (1971) , we fail to see where the DSS&H's conduct proved violative of the equal protection provisions of either the United States or Hawaii Constitutions. The record does not show systematic and injurious discrimination by the DSS&H against the appellant welfare applicants. Until the 30 days elapsed there was no way to establish whether an applicant would fall within a class comprised of welfare applicants whose applications were outstanding for more than 30 days. There is nothing in the record to indicate that any criteria was used which would

132

predetermine the treatment given to an applicant by the DSS&H. Assuming that 80 percent of the applicants were processed within 30 days, as testified by appellee Tam, it would appear that each applicant had an eight out of ten chance of having his application processed within the prescribed time limit. This by itself does not constitute a violation of our state's or the federal equal protection guarantees.

We believe that one of the relevant factors to be considered in determining whether the DSS&H has reasonably complied with the 30-day regulation is the amount of resources, which has been allocated to its use to accomplish the task. Thus, a consideration of the resources available to the DSS&H as well as other surrounding circumstances relevant to DSS&H's ability to process welfare applications within 30 days is proper in determining whether there is reasonable compliance with the state and HEW regulations.

The claims of the appellants are of a nature that does not require exhaustion of administrative remedies. "When the relief sought is against delay in the administrative process, exhaustion is not required." *Deering Milliken* v. *Johnston,* 295 F.2d 856 (4th Cir. 1961). 3 Davis, Administrative Law Treatise § 20.07. Furthermore, the administrative remedies available to the appellant welfare applicants do not appear sufficient to vindicate the claims advanced by them as a class.

There being genuine issues of material fact concerning whether the number of applications processed by the DSS&H within 30 days is reasonable is yet unresolved in this case, the circuit court's judgment granting the DSS&H's motion to quash the alternative writ of mandamus is reversed. The case is remanded for further proceedings not inconsistent with this opinion.

The relief sought by the appellant welfare applicants seems to be equitable in nature even though couched in terms of a petition for mandamus. HRCP Rule 54 (c)

states in part "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings." Under the federal analog of this provision a United States district court granted relief in the nature of a mandatory injunction even though the complaint prayed for relief in the nature of mandamus. *Snyder* v. *Buck*, 75 F. Supp. 902 (D. D.C. 1948), vacated on other grounds. 179 F.2d 466 (D.C. Cir. 1949) *aff'd*, 340 U.S. 15 (1950); *cf.* concurring opinion of Abe, J., *Ramsay Travel, Inc.* v. *Kondo*, 53 Haw. 419, 495 P.2d 1172 (1972). We see no reason why the circuit court on remand should not use its "plenary power to mold its decrees in such form as to conserve the equities of all parties." *Fleming* v. *Napili Kai, Ltd.*, 50 Haw. 66, 70, 430 P.2d 316, 319 (1967).

Reversed and remanded.

*Michael A. Town*, Supervising Attorney, Legal Aid Society of Hawaii (*Robert Gilbert Johnston*, Chief, Civil Division, with him on the briefs), for petitioners-appellants.

*Benjamin M. Matsubara*, Deputy Attorney General (*George Pai*, Attorney General, with him on the brief) for defendants-appellees.